FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 16, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID A.,<br><br>                    Plaintiff,<br><br>     v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br><br>                    Defendant. | NO:  1:18-CV-03189-FVS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 10, 14.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration.  Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d).

ORDER ~ 1

represented by Special Assistant United States Attorney Franco L. Becia. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is granted and Defendant's Motion, ECF No. 14, is denied.

## JURISDICTION

Plaintiff David A.[2] (Plaintiff), filed for disability insurance benefits (DIB) on April 19, 2012, alleging an onset date of March 8, 2011. Tr. 142-48. Benefits were denied initially, Tr. 81-83, and upon reconsideration, Tr. 87-91. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 13, 2014. Tr. 36-58. On July 14, 2014, the ALJ issued an unfavorable decision, Tr. 17-35. The Appeals Council denied review on November 12, 2015. Tr. 1-6.

Plaintiff filed a complaint in U.S. District Court for the Eastern District of Washington on January 15, 2015. Tr. 523-25. On November 15, 2016, the Honorable Stanley A. Bastian entered an Order Granting Plaintiff's Motion for Summary Judgment; Remanding Case. Tr. 526-35. After a second hearing on July 13, 2017, Tr. 478-97, the ALJ issued another unfavorable decision on July 20, 2018. Tr. 428-48. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 45 years old at the time of the first hearing. Tr. 42. He graduated from high school has work experience as a diesel and auto mechanic. Tr. 491, 628. He injured his shoulder in October 2010 while lifting a tire at work. Tr. 629, 665. His primary impairment is his left shoulder and arm, but his right shoulder is also painful. Tr. 482. He testified that he has constant pain in both shoulders which is not as bad when resting but becomes very aggravated when he performs regular activities. Tr. 630. His pain is sometimes relieved by propping his elbows on a table. Tr. 485. Sometimes just the weight of his arms hanging from his shoulders is painful. Tr. 483-84. He takes pain medication daily. Tr. 484.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering

ORDER ~ 4

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

ORDER ~ 5

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can adjust to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant can perform other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from the alleged onset date of March 8, 2011, through his date last insured of December 31, 2016. Tr. 433. At step two, the ALJ found that Plaintiff has the following severe impairments: left shoulder degenerative joint disease with history of arthroscopy, distal clavicle resection, partially torn rotator cuff, and acromioplasty; right shoulder degenerative joint disease; and obesity. Tr. 433. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 434-35.

The ALJ then found that Plaintiff has the residual functional capacity to perform sedentary work with the following additional limitations:

> The claimant can occasionally reach, push, or pull bilaterally, frequently handle and finger bilaterally. He cannot climb ladders. The claimant can occasionally stoop, kneel, and crouch. He cannot crawl.

Tr. 435.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured. Tr. 441. At step five, after considering Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ found there were jobs that existed in the national economy that the Plaintiff could have performed, such as semiconductor bonder, information clerk, and telemarketer. Tr. 442. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 8, 2011, through December 31, 2016, the date last insured. Tr. 442.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence; and

3.  Whether the ALJ made a proper step five finding.

ECF No. 10 at 2.

## DISCUSSION

### A.  Symptom Claims

Plaintiff contends the ALJ improperly rejected his symptom claims. ECF No. 10 at 20-21. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying

ORDER ~ 8

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

ORDER ~ 9

claimant's testimony or between his testimony and his conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found the medical evidence does not substantiate Plaintiff's

allegations of disabling limitations. Tr. 436. An ALJ may not discredit a

claimant's pain testimony and deny benefits solely because the degree of pain

alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical

evidence is a relevant factor in determining the severity of a claimant's pain and its

disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor

which may be relied upon in discrediting a claimant's testimony, although it may

not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ cited findings of generally normal range of motion and strength in

Plaintiff's upper extremities in support of the conclusion that Plaintiff has some

limitations but his ability to reach is not as restricted as alleged. Tr. 436-37 (citing

Tr. 281, 290-91, 366, 371, 695, 856). However, the few records cited by the ALJ

do not reasonably reflect consideration of the record as a whole. For example, in

March 2012, although Plaintiff's upper extremity strength was normal, Dr.

Kennedy found his AC joint was tender on palpation and administered an injection.

Tr. 277. At a follow up appointment, Dr. Kennedy made the same range of

ORDER ~ 10

motion and strength findings but determined that surgery was appropriate. Tr. 281.

At a July 2012 pre-op appointment, although Plaintiff had nearly full range of

motion in the left shoulder, Plaintiff's AC joint was markedly tender, and he had a

positive compression test. Tr. 646. Several months after his operation, Plaintiff

started physical therapy due to a loss of range of motion, weakness of the rotator

cuff and scapular stabilizers, and AC joint arthrosis. Tr. 320. By the end of

September 2012, Plaintiff had improved and his bilateral upper extremity strength

was normal, but he had developed impingement symptoms and Dr. Kennedy

administered another injection. Tr. 290.

In February 2013, significant post-surgery improvement was noted, Tr. 364,

928, but by April he was complaining of pain in both arms and in August 2013,

Plaintiff reported his pain was affecting his ability to do household chores or even

lift a gallon of milk. Tr. 387, 625. In October 2013, Plaintiff saw Dr. Roesler, an

orthopedic surgeon, who found tenderness and pain in the AC joint, reduced range

of motion and positive findings on specialized testing. Tr. 347. Dr. Roesler noted

MRI results indicated Plaintiff had a shoulder injury which had not yet been fully

corrected and which might be improved with further surgery, but that he would

never have a normal shoulder. Tr. 344. In February 2014, Dr. Roesler operated to

repair a labral tear, a partial rotator cuff tear, and impingement. Tr. 419.

By January 2015, Plaintiff was having difficulty cleaning his back when

bathing and reaching for items on high shelves. Tr. 841. While Plaintiff's pain

was somewhat better in April 2015, Dr. Roesler found Plaintiff still had pain and

ORDER ~ 11

tenderness with elevation of the arm with a palpable defect in his clavicle.  Tr. 940.

These findings suggest that even with normal strength and range of movement,

Plaintiff experienced significant reaching limitations.

Furthermore, seven of eight treating or examining providers who assessed

limitations opined that Plaintiff's ability to reach is very limited or Plaintiff is

unable to reach or work overhead:  Dr. Griffin, who found in June 2013 that

Plaintiff should not lift greater than ten pounds, reach above his head, or perform

repetitive pushing or pulling, and is limited to 11-20 hours of sedentary work per

week, Tr. 332-34 (similar limitations assessed in March 2012 and April and May

2013, Tr. 252, 329-31, 901);  Dr. Roesler, who opined in November 2013 that

Plaintiff is unable to perform overhead work ever, Tr. 345, and in April 2015

agreed with Dr. Newton's findings, Tr. 673; Dr. Shaw, who indicated in February

2014 that Plaintiff is severely limited and cannot work, Tr. 743-45; Dr. Farwaha,

who opined in January 2015 that Plaintiff is unable to abduct his arm or lift or push

objects, Tr. 748-50; Dr. Newton, who found in April 2015 that Plaintiff cannot do

overhead work or work in front of his body, Tr. 665-72; PT Bullock, who opined

in April 2016 that Plaintiff should seldom reach overhead and is limited to

occasional manipulation and handling, Tr. 954 (similar limitations assessed in

October 2013, Tr. 627); and Dr. Kopp, who concurred with the evaluation of PT

Bullock in May 2016, Tr. 942-47.[3]  The ALJ rejected reaching and manipulation

limitations in all of these opinions.[4]  Tr. 438-41.

---

[3] For purposes of this discussion, the Court does not include the October 2011

opinion of Chester McLaughlin, M.D., who opined that Plaintiff had no functional

limitations, Tr. 222-30, or the June 2012 joint opinion of Lowell Anderson, M.D.,

and Toomas Eisler, M.D., who did not opine regarding Plaintiff's ability to engage

in reaching, manipulative, or postural movements.  Tr. 235-48.  The ALJ gave

limited weight to these opinions, Tr. 439-40, and Plaintiff does not challenge the

ALJ's consideration of them.

[4] The only examining or treating provider whose opinion was given significant

weight is Dr. Kennedy, who concluded in February 2013 that "[h]e is currently

capable of working with light use of the left upper extremity."  Tr. 366.  The ALJ

found that Dr. Kennedy "opined that the claimant retains the capacity for light to

sedentary work."  Tr. 438.  However, it is not clear that Dr. Kennedy's opinion that

Plaintiff can work with "light use of the upper extremity" is equivalent to the

vocational meaning of sedentary or light work without additional limitations on the

use of the upper extremity.  The only other reaching limitations credited by the

ALJ were assessed by Olegario Ignacio, Jr., M.D., who reviewed the record in

December 2012 and opined that Plaintiff was capable of medium work with

postural limitations, and with manipulative limitations of frequent reaching in

front, laterally, and overhead on the left side.  Tr. 76-78. 438. The ALJ rejected Dr.

ORDER ~ 13

The ALJ also found the objective medical evidence does not show Plaintiff's left upper extremity is as limited as alleged and that the evidence does not show an objective cause for right upper extremity manipulative limitations. Tr. 437. The ALJ cited several instances of an absence of findings, including a June 2012 orthopedic exam noting symmetrical upper extremity strength and bulk. Tr. 437, 682. However, the ALJ overlooked other findings from that exam such as a tingling sensation into Plaintiff's fingers with rapid hand movements, Tinel's at the elbows and wrists bilaterally, and a tingling sensation diffusely around the shoulders. Tr. 682. The ALJ cited a May 2013 office visit from Dr. Griffith indicating Plaintiff was having significant issues with both shoulders, but Plaintiff denied numbness or tingling and had full strength in his hand.[5] Tr. 397, 437.

The ALJ also noted Dr. Kopp's exam findings of no upper extremity atrophy, normal upper extremity sensory function, intact motor strength, and normal Tinel's testing in May 2016. Tr. 437, 944. The ALJ observed that Dr. Kopp found that Plaintiff cannot reach, handle or grasp constantly, but that does

---

Ignacio's opinion regarding medium work and postural limitations because later records dictated greater limitations, but found the frequent manipulative limitations were "well supported." Tr. 438.

[5] The May 7, 2013 office visit record is of limited value because part of the record is missing or illegible. Tr. 397.

ORDER ~ 14

not prevent frequent handling and fingering.  Tr. 437.  However, the ALJ failed to recognize that Dr. Kopp reviewed and agreed with the findings of Mr. Bullock, who conducted a thorough assessment of Plaintiff's manipulative abilities, discussed *infra*.  Tr. 947.  Lastly, the ALJ cited a generic neurologic review of systems finding of no numbness or weakness during a December 2016 office visit focused on weight loss and testosterone issues.  Tr. 437, 774.

Notwithstanding the foregoing, the ALJ failed to include in the discussion of objective manipulative findings the results of Mr. Bullock's physical functional assessments which are the most thorough physical functional evaluations in the record.  Tr. 627-44, 954-73.  Mr. Bullock tested Plaintiff's fine manipulation and found he scored lower than the first percentile in all areas.  Tr. 636, 964.  He also tested Plaintiff's grip strength which scored in the 34th and 35th percentile for the left and the 39th and 40th percentile for the right.  Tr. 636, 964-65.  Mr. Bullock tested Plaintiff's ability to sort and handle objects and observed significant limitations as the task progressed.  Tr. 638.  These findings are more persuasive than a handful of treatment notes, some with mixed findings, because they are based on objective measures.  The ALJ rejected Mr. Bullock's manipulative findings, discussed further *infra*, because they were "inconsistent with the record evidence," which consists of the few findings discussed above which are of questionable cumulative significance.  Tr. 439.

Even if the ALJ's consideration of the objective evidence was reasonable, because the ALJ's second reason for giving less weight to Plaintiff's allegations is

ORDER ~ 15

not legally sufficient, discussed *infra*, and because the objective evidence alone may not be the only reason for discounting a claimant's symptom claims, s*ee Burch*, 400 F.3d at 680, the ALJ's finding that Plaintiff's symptom claims are inconsistent with the objective evidence is not a clear and convincing reason for discounting those symptom claims.

Second, the ALJ found Plaintiff engaged in activities inconsistent with Plaintiff's allegations. Tr. 437. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ found that Plaintiff's August 2016 report of driving his son to school indicates the use of his upper extremities and reaching is not as limited as alleged. Tr. 437 (citing Tr. 784). However, there are no details in the record

regarding the distance or time spent driving his son to school. Physical therapist David Bullock, whose opinion was partially credited by the ALJ, Tr. 439, indicated in April 2016 that Plaintiff could use a steering wheel for ten to 15 minutes at a time but that he could not perform work as a driver. Tr. 954. Further, Plaintiff did not testify that he cannot drive; he testified that an independent medical exam in 2016 for his L&I claim resulted in a finding that he could not perform work as a driver because, "I can't do it [drive] for long periods of time." Tr. 489. Thus, Plaintiff's ability to drive his son to school is not inconsistent with his symptom claims and this does not reasonably support the finding the ALJ's finding that Plaintiff's alleged limitations are less than fully credible.

The ALJ also cited Plaintiff's report that he spent time repairing a lawn mower as evidence that Plaintiff's ability to use his hands is not as limited as alleged. Tr. 437 (citing Tr. 394). A May 2013 record indicates Plaintiff had been walking more and had worked on his girlfriend's lawn mower in the weeks prior to the appointment. Tr. 394. Without additional details indicating how often, how long, or in what manner Plaintiff worked on a lawn mower, this purported inconsistency is not compelling evidence. Even if in this instance Plaintiff used his shoulders in a manner inconsistent with his symptom claims, this is not substantial evidence of inconsistency between Plaintiff's activities and his allegations. Thus, Plaintiff's activities do not constitute a clear and convincing reason for giving less weight to his symptom claims.

**B.  Medical Opinion Evidence**

ORDER ~ 17

Plaintiff contends the ALJ improperly rejected the opinions of Grant Griffith, D.O.; Stephen Roesler, M.D.; Bobby Shaw, M.D.; James R. Kopp, M.D., P.C.; St. Elmo Newton III, M.D.; Radhika Farwaha, M.D.; and David Bullock, PT. ECF No. 10 at 3-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

ORDER ~ 18

only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

### 1. Bobby Shaw, M.D.

In October 2013, Dr. Shaw, a treating physician, found Plaintiff is unable to work and has lifting and carrying limitations consistent with sedentary work. Tr. 338-39. Dr. Shaw noted that conservative treatment had not provided much relief and that due to significant functional impairment, he had been referred to Dr. Roesler, an orthopedic surgeon. Tr. 339. The ALJ gave some weight to this assessment but found the opinion reflects a temporary condition because Dr. Shaw indicated Plaintiff's ability to work would be limited for six to 12 weeks, depending on when orthopedic surgery was scheduled.[6] Tr. 439. Because this opinion anticipates a change in functioning due to surgery, the ALJ reasonably found the persuasiveness of the opinion is diminished and gave little weight to Dr. Shaw's conclusion that Plaintiff is unable to work.[7] Tr. 429.

---

[6] To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).

[7] Plaintiff contends the prior district court order already found error with this analysis. ECF No. 10 at 8. However, the ALJ incorporated the district court's

ORDER ~ 19

In February 2014, Dr. Shaw opined that Plaintiff is severely limited and unable to work. Tr. 743-44. The ALJ gave very little weight to Dr. Shaw's February 2014 assessment. Tr. 440.

First, the ALJ found Dr. Shaw did not provide a basis for his conclusions or explain his analysis. Tr. 440. When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings. *Tonapetyan v. Halter*, 42 F.3d 1144, 1149 (9th Cir. 2001), *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). However, if treatment notes are consistent with the opinion, a conclusory opinion may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). While the DSHS WorkFirst Documentation Request Form for Medical or Disability Condition completed by Dr. Shaw is not entirely a check-box form, it does not ask

---

finding in the second decision. *Compare* Tr. 439 (The ALJ found, "Dr. Shaw opined that the claimant's condition would limit the claimant's ability to work for six to 12 weeks, and then may change due to treatment.") *with* Tr. 534 (The Court found, "Dr. Shaw believed that Plaintiff could not perform any hours of work due to his conditions, and this might change in 6-12 weeks, when the surgery was to take place.").

for an explanation of the basis of any conclusions. Tr. 743-45. Since Dr. Shaw is a treating physician, the ALJ should have evaluated his treatment notes to determine whether Dr. Shaw's findings reasonably support his opinion.

Second, the ALJ found Dr. Shaw's opinion is internally inconsistent because, according to the ALJ, Dr. Shaw opined both that Plaintiff can perform sedentary work and cannot work. Tr. 440. A medical opinion may be rejected by the ALJ if it contains inconsistencies. *Bray*, 554 F.3d at 1228. However, the ALJ misstated Dr. Shaw's opinion, as Dr. Shaw actually opined that Plaintiff's lifting and carrying capacity is severely limited (defined as "unable to lift at least 2 pounds or unable to stand or walk") and did not opine that Plaintiff is capable of sedentary work. Tr. 744. The assessment of a severe limitation for lifting and carrying is not necessarily inconsistent with Dr. Shaw's finding that Plaintiff is not able to work, look for work, or prepare for work. Tr. 743. The ALJ erred and this is not a specific, legitimate reason for giving little weight to the opinion.

Third, the ALJ found Dr. Shaw's opinions are inconsistent with the record evidence and inadequately supported by the objective evidence. Tr. 440. As discussed *supra*, the ALJ's discussion of the objective evidence was insufficient. Thus, this is not a specific, legitimate reason for rejecting Dr. Shaw's opinion.

## 2. Stephen Roesler, M.D.

In November 2013, Dr. Roesler, a treating orthopedic surgeon, recommended surgery to repair a labral tear, but concluded that regardless of the outcome of surgery, "he will not have a normal shoulder." Tr. 345. He opined that

Plaintiff should not lift, pull, or push greater than 25 pounds and should not ever do overhead work. Tr. 345. The ALJ gave little weight to Dr. Roesler's opinion regarding overhead work. Tr. 438.

The only reason cited by the ALJ for rejecting the overhead work limitation is that Dr. Roesler's opinion is inconsistent with the objective findings in the record and Plaintiff's ability to use his right arm for overhead work. Tr. 438. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). In October 2013, Dr. Roesler indicated Plaintiff had symptoms of instability, clicking, catching and pain and on exam found tenderness in several areas, significant tenderness in the AC joint, varied range of motion findings, O'Brien's test was positive and Speed's test was positive. Tr. 347. These findings appear to reasonably support his conclusions in November 2013. Additionally, the ALJ did not cite any evidence in the record supporting the assertion that Plaintiff can use his right arm for overhead work. Tr. 438. Furthermore, as discussed *supra*, the ALJ's discussion of the medical evidence regarding reaching limitations is insufficient. As a result, this reason is not supported by substantial evidence and the ALJ improperly rejected Dr. Roesler's opinion regarding overhead work.

*3. Grant Griffith, D.O.*

In July 2012, Dr. Griffith, a treating physician, opined that Plaintiff can seldom reach or work above the shoulders and can only occasionally keyboard,

ORDER ~ 22

flex and extend the wrists, grasp, or engage in fine manipulation. Tr. 626. He wrote an undated letter indicating that Plaintiff is unable to work as an auto mechanic and is limited to lifting ten pounds or less on the left and right sides. Tr. 252. Dr. Griffith also wrote letters in March and April 2013 verifying that Plaintiff is limited in both arms. Tr. 624-25. In May 2013, Dr. Griffith opined that Plaintiff is limited to sedentary work and is limited to lifting less than ten pounds in each shoulder, although he could perform less strenuous work for 21-30 hours per week. Tr. 329. In June 2013, he opined that Plaintiff is limited to sedentary work and is limited in lifting greater than ten pounds, reaching above his head, and repetitive pushing or pulling. Tr. 332. He indicated Plaintiff could work 11-20 hours per week "as long as it's sedentary work [without] lifting." Tr. 332.

The ALJ gave little weight to Dr. Griffith's June 2013 opinion regarding Plaintiff's ability to reach overhead and push or pull, and some weight to Dr. Griffith's other opinions, including the undated letter and the April 2013 letter. Tr. 438 (citing Tr. 332, 624, 901). The ALJ incorporated by reference his prior analysis of Dr. Griffith's opinions, presumably including the prior discussion of the May 2013 opinion. Tr. 438 (citing Tr. 28). In the prior decision, the ALJ gave little weight to the portion of Dr. Griffith's opinions indicating Plaintiff could sustain work for 11-20 hours or 21-30 hours per week. Tr. 28.

First, the ALJ found Dr. Griffith did not specify that Plaintiff is totally precluded from or give any specific limitation on frequency of reaching above his head, pushing or pulling, which limits the value of the opinion. Tr. 438. An ALJ

ORDER ~ 23

may reject an opinion that does "not show how [the claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan,* 169 F.3d at 601. However, the ALJ overlooked that Dr. Griffith specified no lifting when he stated that Plaintiff could work "as long as it's sedentary work [without] lifting." Tr. 332. Furthermore, the ALJ did not discuss Dr. Griffith's July 2012 opinion which contained specific limitations on reaching, pushing, and pulling, as well as manipulative limitations which were never addressed by the ALJ. Tr. 626. Thus, this reason is not supported by substantial evidence.

Second, the ALJ found Dr. Griffith's opinions are rebutted by the opinions of Dr. Kopp and Mr. Bullock, who found Plaintiff can push and pull within certain limitations. Tr. 438. Dr. Kopp and Mr. Bullock found Plaintiff can seldom push and pull based on testing which indicated that Plaintiff experienced a rapid increase in his shoulder pain as he began lifting, carrying, pushing, and pulling activities, including a rapid increase in pain while pulling a weighted cart. Tr. 947, 954, 967. Notwithstanding, the ALJ rejected the pushing and pulling limitations assessed by Dr. Kopp and Mr. Bullock (*see* RFC finding that Plaintiff can occasionally reach, push, or pull bilaterally, Tr. 435), so it is not clear how this finding regarding Dr. Griffith's opinion could be based on substantial evidence.

Third, the ALJ found the objective medical evidence is inconsistent with total restriction of overhead work. Tr. 438. As discussed *supra*, the ALJ's consideration of the objective evidence regarding reaching limitations is

insufficient.  This is not a specific, legitimate reason for rejecting Dr. Griffith's opinion.

Lastly, the ALJ did not specifically address Dr. Griffith's assessment that Plaintiff is limited to less than full time work.  Tr. 438.  Although the ALJ incorporated his prior analysis by reference, that analysis rejected the limitations of 11-20 hours or 21-30 hours of work per week as not supported by the objective evidence and Plaintiff's daily activities.  Tr. 28, 438.  The district court directed the ALJ to reconsider Dr. Griffith's opinions on remand, Tr. 534, and the incorporation by reference of these prior findings is insufficient to constitute reconsideration in this instance.   Furthermore, as discussed *supra*, those findings are insufficient in this decision.  Thus, the ALJ's consideration of Dr. Griffith's opinions again contains errors.

### 4.  David Bullock, PT

In October 2013, Mr. Bullock evaluated Plaintiff and completed a physical capacities evaluation.[8]  Tr. 627-44.  After a thorough evaluation, Mr. Bullock

---

[8] The ALJ is required to consider evidence from non-acceptable medical sources such as physical therapists but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so."  *Molina*, 674 F.3d at 1104; 20 C.F.R. § 404.1527(f).

opined Plaintiff is limited to sedentary to light work but can seldom to occasionally reach overhead, perform fine manipulation, and operate hand controls with the left hand, and can occasionally perform those functions with the right hand.  Tr. 627. The ALJ gave some weight to Mr. Bullock's 2013 opinion but rejected his opinion that Plaintiff can seldom reach overhead "as this is inconsistent with the record as a whole."  Tr. 440.  As discussed *supra*, the ALJ's discussion of the record regarding reaching limitations is insufficient, so this reason is not supported by substantial evidence.

In April 2016, Mr. Bullock conducted a second physical capacities evaluation and opined that Plaintiff is limited to sedentary work with some postural limitations, should seldom perform work above the shoulders, and should only occasionally engage in reaching, handling, or manipulating activities.  Tr. 954-73. The ALJ gave significant weight to Mr. Bullock's 2016 opinion regarding exertional limitations but did not adopt his opinion that Plaintiff is limited to occasional handling and manipulative activities.  Tr. 439.

First, the ALJ found the opinion is inconsistent with the record which shows no significant manipulative deficits such as strength or sensory deficits in Plaintiff's hands or forearms.  Tr. 439.  As discussed *supra*, the few objective findings cited by the ALJ are not persuasive in light Mr. Bullock's in-depth objective testing.  This reason is not supported by substantial evidence.

Second, the ALJ found the manipulative deficiencies observed by Mr. Bullock were based in part on the cumulative effects of testing and do not reflect

the claimant's maximum ability.  Tr. 439.  While the RFC analysis involves "the

most [a claimant] can still do despite his limitations," it also includes an

assessment of the claimant's capacity for work activity "on a regular and

continuing basis."  20 C.F.R. § 404.1545(a)-(b).  Mr. Bullock noted that during

fine manipulation testing,

> Up until this point in the evaluation, the client had performed several
> 2 minute tests using both UE's [upper extremities] for repetitive
> reaching out in front of his body with mild compensation.  However,
> in the middle of this activity is when the client began to rub his left
> shoulder and roll both shoulders in between each individual test.  The
> client was observed to be gradually growing more restless with
> repetitive reaching at this point in the evaluation. . . . It is estimated
> that the client had been doing about 15-20 minutes of on/off repetitive
> reaching up to this point in the evaluation.

Tr. 964.  Neither Mr. Bullock nor any other medical source attributed Mr.

Bullock's assessment of limitations to the cumulative effect of testing, so the basis

for the ALJ's finding of cumulative effect is unclear.[9]  Furthermore, Plaintiff

observes that Mr. Bullock's exam took four hours, so if the cumulative effect of

---

[9] It is improper for an ALJ to act as his own medical expert, substituting his

opinion for the opinion of a medical doctor.  *Day v. Weinberger*, 522 F.2d 1154,

1156 (9th Cir.1975); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (As

a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his

own views for uncontroverted medical opinion" and is "simply not qualified to

interpret raw medical data in functional terms.").

ORDER ~ 27

the exam reflects disabling limitations over that time period, it would be reasonable to expect those would be amplified in an eight-hour workday. ECF No. 10 at 16. The ALJ's conclusion is not supported by substantial evidence and this is not a legally sufficient reason for rejecting the manipulative findings made by Mr. Bullock.

### 5. *James R. Kopp, M.D., P.C.*

Dr. Kopp reviewed medical records and examined Plaintiff in May 2016. Tr. 942-53. He opined Plaintiff has a permanent impairment, noting it had been rated variously by different physicians. Tr. 946. Dr. Kopp noted his assessment of limitations was slightly less than assessed by Dr. Newton but attributed that to a slight improvement in range of motion. Tr. 946. Dr. Kopp opined that Plaintiff is unable to work as a mechanic due to lifting restrictions, and that Plaintiff was unable to work between October 1, 2010 and October 27, 2016 due to his injury, two surgeries, and the recovery from both. Tr. 946. Dr. Kopp also agreed with the reaching, handling, grasping, and repetitive motion findings of Mr. Bullock. Tr. 947. Dr. Kopp agreed with the findings in Mr. Bullock's physical capacities evaluation report from April 2016 and affirmed limitations of ten pounds lifting, pushing, and pulling, and that Plaintiff requires support for his arm if he is in a prolonged sitting or standing position. Tr. 947.

The ALJ described Dr. Kopp's examination as "thorough" and gave weight to his conclusion that Plaintiff can perform sedentary work. Tr. 439. However, the ALJ gave less weight to the conclusion that Plaintiff was unable to work from

October 2010 to October 2015 because Dr. Kopp did not provide a vocational analysis, and because he is not qualified to provide a vocational analysis. Tr. 439. A medical source opinion that a claimant is "disabled" or "unable to work" is not a medical opinion and the ALJ is not required to determine that the claimant meets the statutory definition of disability. 20 CFR § 404.1527(d)(1). The determination of disability is an issue reserved to the Commissioner. S.S.R. 96-5p. Therefore, the ALJ reasonably gave that portion of Dr. Kopp's opinion little weight. Tr. 439.

However, the ALJ did not acknowledge or give weight to Dr. Kopp's opinion that Mr. Bullock's functional assessment is accurate and that limitations of 10 pounds lifting, pushing, and pulling and the need for support for Plaintiff's arm with prolonged sitting or standing are appropriate. Tr. 947. The ALJ's failure to address these key findings is error.

### 6. *St. Elmo Newton III, M.D.*

Dr. Newton reviewed records and examined Plaintiff in April 2015 and concluded Plaintiff's shoulder injury caused a permanent impairment. Tr. 665-72. He opined that Plaintiff should not do a job that requires overhead work or work in front of his body and should avoid lifting objects greater than 20 or 25 pounds. Tr. 670. He further opined that Plaintiff is capable of working, which would be best done at bench height or in a sitting or standing position. Tr. 670. The ALJ gave limited weight to Dr. Newton's opinion. Tr. 440.

The ALJ determined that although Dr. Newton reviewed medical records, he only tested Plaintiff's shoulder range of motion and did not perform a thorough

ORDER ~ 29

examination. Tr. 440. Thus, the ALJ determined that Dr. Newton's opinion is not as persuasive as the opinions of Dr. Kopp and Mr. Bullock, who did not opine that Plaintiff is precluded from working overhead or in front of his body. Tr. 440. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). First, although the ALJ critiques Dr. Newton's opinion for being based primarily on range of motion findings, it is noted that the ALJ relied heavily on range of motion and strength findings in evaluating the medical record regarding reaching. Tr. 436-37. Additionally, Dr. Newton reviewed numerous records in developing his opinion. Tr. 666-68.

Furthermore, although Dr. Kopp and Mr. Bullock did not find Plaintiff is precluded from working overhead, they found that Plaintiff should seldom work overhead, which was not credited by the ALJ. Tr. 954. Since the Kopp/Bullock reaching limitation was rejected, substantial evidence does not support the ALJ's conclusion that the Kopp/Bullock opinion contradicts Dr. Newton. Thus, this is not a specific, legitimate reason for rejecting Dr. Newton's opinion.

### 7. Radhika Farwaha, M.D.

Dr. Farwaha examined Plaintiff and completed a DSHS documentation form in January 2015. Tr. 748-50. She opined that Plaintiff is unable to work because he is unable to abduct his arm and lift or push objects and indicated a lifting and carrying limitation of sedentary work. Tr. 748-49. The ALJ gave little weight to Dr. Farwaha's opinion. Tr. 440.

ORDER ~ 30

First, the ALJ found that Dr. Farwaha's conclusions are contradicted by the opinions and clinical findings in Dr. Kopp's and Mr. Bullock's reports. Tr. 440. As discussed *supra*, the ALJ's repeated finding that opinions rejected by the ALJ support rejection of other opinions is without reasonable basis. This is not a specific, legitimate reason for rejecting Dr. Farwaha's opinion.

Second, the ALJ found that Dr. Farwaha did not examine Plaintiff or cite objective findings or provide a specific basis for her conclusions. Tr. 440. However, the record reflects Dr. Farwaha examined Plaintiff on the day her opinion was rendered. Tr. 841. She found limited range of motion left shoulder abduction 45 degrees, forward flexion at 90 degrees passively, positive Hawking's test, and tenderness of the deltoid muscle. Tr. 841. The form completed by Dr. Farwaha does not ask about objective findings or an explanation of the basis of any conclusions. Tr. 748-50. Her findings on exam reasonably correlate to the limitations she assessed. The ALJ overlooked the record supporting Dr. Farwaha's opinion, so the ALJ's reasoning is not supported by substantial evidence.

## C. Step Five

Plaintiff contends the ALJ erred at step five by failing to identify a significant number of jobs in the national economy that Plaintiff can perform. ECF No. 10 at 18-20. The Court has already determined that the ALJ erred in weighing and considering the medical evidence and Plaintiff's symptom claims, which calls into question the validity of the ALJ's RFC, hypothetical to the vocational expert, and step five findings. However, the Court considers the step five argument because it

ORDER ~ 31

further informs the Court in exercising its discretion to remand for further

proceedings or for an immediate award of benefits.

At step five, the burden of production shifts to the Commissioner to produce

evidence that other work exists in significant numbers in the national economy that

a claimant could perform in light of his age, education, work experience, and RFC.

20 C.F.R. § 404.1520(e); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685,

689 (9th Cir. 2009). If the claimant can do other work, the Commissioner must

establish that there are a significant number of jobs in the national economy that

claimant can perform. The Commissioner may meet this burden with testimony

from a vocational expert. *Tackett*, 180 F.3d at 1099. The ALJ's hypothetical

questions to the vocational expert must be based on medical assumptions supported

by substantial evidence in the record which reflect all of a claimant's limitations.

*Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001).

Based on the testimony of the vocational expert, the ALJ found that Plaintiff

can perform representative occupations of semiconductor bonder, an unskilled job

of SVP 2; information clerk, a sedentary, semi-skilled job of SVP 4; and

telemarketer, a sedentary, semi-skilled job of SVP 3. Tr. 442. Plaintiff contends

the SVP 3 and 4 jobs of information clerk and telemarketer are not properly

included as representative occupations because they require work experience or

education Plaintiff does not possess. ECF No. 10 at 19. Defendant does not argue

otherwise, ECF No. 14 at 19, and without any further explanation by the ALJ or

the VE, the inclusion of these two jobs as examples of work available to the Plaintiff based on the RFC was error.

Plaintiff next contends that the number of jobs of the only remaining representative occupation available based on the RFC, the occupation of semiconductor bonder, is inadequate to constitute a "significant number." ECF No. 10 at 20. The Ninth Circuit has not established a "bright-line rule for what constitutes a 'significant number' of jobs." *Beltran*, 700 F.3d at 389. However, the Ninth Circuit has held the availability of 25,000 national jobs presents a "close call" but constitutes a significant number of jobs, *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528-29 (9th Cir. 2014), and that the availability of 1,680 national jobs does not constitute a significant number of jobs. *Beltran*, 700 F.3d at 390. Here, the vocational expert testified that there are 5,000 semiconductor jobs available nationally and 500 locally. Tr. 492. This is well below the number that the Ninth Circuit has characterized as a "close call" in *Beltran*. Defendant cites an Eighth Circuit case recognizing 10,000 national and 200 local jobs as a significant number of jobs. ECF No. 14 at 20-21 (citing *Johnson v. Chater*, 108 F.3d 178 (8th Cir. 1997)). The combined 5,500 semiconductor jobs available is almost half the number of jobs available in *Johnson*, and the Court is not persuaded that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. Thus, even without the errors in evaluating the medical evidence and Plaintiff's symptom claims, it appears that the Commissioner has not met its

burden to demonstrate that Plaintiff can work with the limitations in the RFC finding.

**D.     Remedy**

Because the ALJ committed multiple errors, the Court must determine whether the matter should be remanded for further proceedings or whether an award of benefits is appropriate.

Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, we remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, this Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The Court finds that each of these credit-as-true factors is satisfied and that remand for the calculation and award of benefits is warranted. First, the record has been fully developed. Over the course of the record, Plaintiff has had two surgeries, numerous appointments and treatments, and at least nine treating or examining medical providers have offered opinions. This matter has previously been remanded and there is ample testimony from two hearing transcripts. The second prong is satisfied because, as discussed *supra*, the ALJ erred in evaluating the evidence and rejecting Plaintiff's testimony and in evaluating numerous medical opinions and weighing the opinion evidence. The third prong of the credit-as-true rule is satisfied because the vocational expert was asked a hypothetical question about the ability of an individual with limitations described by Dr. Kopp and Mr. Bullock and the vocational expert testified that those limitations would be incompatible with competitive work. Tr. 492-93. Furthermore, the error at step five indicates that regardless of the other errors, there are insufficient jobs available in the national or local economy for a person with Plaintiff's limitations.

The credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations omitted). Plaintiff's application has been pending for nearly eight years, has been reviewed by the ALJ twice and the

ORDER ~ 35

Appeals Council once, and was remanded once with little benefit because the ALJ again erred in evaluating the medical opinion evidence and assessing the RFC. Further proceedings would appear to serve no useful purpose. *See Hill*, 698 F.3d at 1162 (noting a Court may exercise its discretion to remand a case for an award of benefits "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.") (internal citations and quotations omitted). In this case, the record does not raise "serious doubt" that Plaintiff's shoulder impairments preclude significant work activity.

The Court therefore reverses and remands to the ALJ for the calculation and award of benefits.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is DENIED.

3. This case is **REVERSED** and **REMANDED** for immediate calculation and award of benefits consistent with the findings of this Court.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** March 16, 2020.

1

2                _____*s/ Fred Van Sickle*_____

3                Fred Van Sickle
           Senior United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21